UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                      )<br>)<br>(1) ARISMENDY GIL-PADILLA          )<br>     a/k/a/ "Flow",                              )<br>                    Defendant              ) | Cr. No. 19-10425-DJC-1 |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits this memorandum in advance of the May 26, 2022 sentencing hearing of the defendant, Arismendy Gil-Padilla, a/k/a "Flow." On February 2, 2022, Gil-Padilla pled guilty to counts One through Five of the Superseding Indictment, pursuant to a binding Fed. R. Crim. P. 11(c)(1)(C) plea agreement and faces a mandatory sentencing range of 120 to 188 months. The government respectfully requests that the Court accept the plea agreement and sentence the defendant to 188 months' imprisonment, which is the low end of the applicable Sentencing Guidelines range, but the high end of the agreed-to C plea range. As set forth in the plea agreement, the parties agree that the term of imprisonment be followed by a six-year term of supervised release. Defendant must also pay a special assessment of $500.

## I.  BACKGROUND AND THE OFFENSE

This case arose from an investigation of the Trinitarios Street Gang, during which the law enforcement conducted numerous controlled buys of firearms and controlled substances from individuals who sources believe are members or connected to the Trinitarios Gang. Gil-Padilla is a member of the Trinitarios Gang.

Gil-Padilla pled guilty to felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count One); distribution of and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two); felon in possession of a firearms and

ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count Three); distribution of and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Four); and distribution of and possession with intent to distribute 40 grams or more of fentanyl and cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Five).

The five counts that Gil-Padilla pled guilty to arise from three separate controlled buys with cooperating witnesses on June 28, 2018, July 11, 2018,[1] and August 2, 2018, captured on audio and video, involving the sale of total of nine firearms, one of which was previously reported stolen, and ammunition, a total of 48.7 grams of fentanyl and 139.7 grams of cocaine hydrochloride.  The defendant arranged the sales to the cooperating witnesses through (recorded) telephone calls and text messages.

The defendant also participated in controlled buys with the cooperating witness on April 19, 2018, April 27, 2091, May 8, 2018, May 16, 2018, and May 27, 2018, during which he sold the confidential source seven additional firearms (three stolen) and ammo, a laser sight, and 97.8 grams of fentanyl and 28 grams of cocaine.

The firearms sold to the cooperating witness were:

1. a Taurus 9mm handgun bearing serial number TJR4450 (reported stolen);
2. a Taurus 9mm handgun bearing serial number TJX61132;
3. a Diamondback DB9 9mm handgun, bearing serial number YD3734, with an empty magazine;
4. a Sig Sauer P290 9mm handgun, bearing serial number 26C059942, with one empty magazine and one loaded magazine;
5. a Ruger LC9S 9mm handgun, bearing serial number 45108235, with one empty magazine;
6. a Taurus .38 special revolver, bearing serial number KC95041;
7. a Walther PPS 9mm handgun, bearing serial number AH0622, with 2 empty magazines;
8. a Smith and Wesson SW9VE 9mm handgun, bearing serial number DUB1467, with one large capacity empty magazine;

---

[1] Gil-Padilla's co-defendant, Jonathan Arias, was charged in Count Three, pled guilty, and was sentenced on September 1, 2021 to a term of imprisonment of 39 months, supervised release for three years, and a special assessment of $100.

9. a Kahr CW9 9mm handgun, bearing serial number EI6577, with one empty magazine;
10. a Browning .22 caliber handgun, bearing serial number 9244P2 (reported stolen);
11. a Skyy Model CPX-1 9mm handgun bearing serial number 15803 (reported stolen);
12. a Lorcin Model 380 handgun, bearing serial number 532105;
13. a Sccy Industries Model CPX-2 9mm handgun, bearing serial number 382784;
14. a Smith & Wesson SD9V 9mm handgun, bearing serial number FXM9811 (reported stolen);
15. a Ruger SR9 9mm handgun, bearing serial number 330-50255; and
16. a Ruger LCP 380 handgun, bearing serial number 371679063 (reported stolen).

In sum, between April and August 2018, eight separate controlled purchases of guns and/or drugs were made from the defendant. Over the course of the investigation, Gil-Padilla sold a cooperating witness a total of 16 firearms (four stolen), ammunition, 139.7 grams of cocaine hydrochloride, 28 grams of cocaine, and 137.5 grams of fentanyl.

## II. GUIDELINES ANALYSIS AND CRIMINAL HISTORY

The parties, as outlined in the plea agreement, and the United States Probation Office, as outlined in the Presentence Report ("PSR"), agree that Gil-Padilla's total offense level is 31. As determined by probation, the defendant is a career offender, PSR ¶ 47. Therefore, Gil-Padilla has a Criminal History Category of VI, and his sentencing guidelines range is 188 to 235 months. PSR ¶ 91. The C-plea provides for a mandatory sentencing range of 120 to 188 months.

## III. 18 U.S.C. §3553(a) FACTORS

Consideration of the §3553(a) factors demonstrates a sentence of 188 months is the appropriate sentence in this case. Foremost among those factors is the nature of this offense, involving the illegal sale of firearms and controlled substances.

### A. The Nature of the Offense

*Firearms*

The threat of guns in modern society is well documented and grows more serious every

3

day.  Less well understood, but no less significant, is the fact that the harm caused by the illegal sale of firearms may not be felt for many years to come.  This is because the data shows that the average time from the purchase of a new gun at a gun store to the recovery of the gun at a crime scene ("time to crime") in Massachusetts is *8.91 years*.[2]  These data mean that the illegal guns trafficked by the defendant, were they not recovered, would likely be used in the hands of criminals for more than a decade to come.[3]

And simply by involving a firearm, those crimes become much, much greater in seriousness and harm.  Data show that states with more guns have more deaths.[4]  Available research demonstrates that the involvement of guns makes quarrels, robberies, domestic disputes, and other conflicts deadlier.  Those engaged in violent crime in the United States are not more intent on killing compared to their counterparts in other nations, they merely have better access to powerful tools that make death a more likely outcome of an assault or conflict.[5]  As a result, America has six times as many firearm homicides as Canada, and nearly 16 times as many as Germany.[6]  The rate of murder or manslaughter by firearm is the highest in the developed world.

---

[2] *See ATF Firearms Trace Data for 2020*, available at:  https://www.atf.gov/resource-center/firearms-trace-data-2019.  The Massachusetts data was not an aberration, as the national average was 7.01 years. Id.

[3] Of course, the guns discussed in the PSR were all purchased by law enforcement and will remain off the street.  Nevertheless, the true harmfulness of this offense can be seen in the all the guns *not* recovered by law enforcement.

[4] German Lopez, VOX, *America's unique gun violence problem, explained in 16 maps and charts*, (August 31, 2019), *available at*: https://www.vox.com/policy-and-politics/2017/10/2/16399418/us-gun-violence-statistics-maps-charts.

[5] David M. Hureau & Anthony A. Braga, *The Trade in Tools: The Market for Illicit Guns in High-Risk Networks*, CRIMINOLOGY, volume 56 issue 3, (July 18, 2018), *available at*: https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187

[6] Mona Chalabi, *Gun homicides and gun ownership listed by country*, THE GUARDIAN, (July 22, 2012), *available at*: https://www.theguardian.com/news/datablog/2012/jul/22/gun-homicides-ownership-world-list#data

There were almost 11,000 deaths as a result of murder or manslaughter involving a firearm in 2017. That is approximately 73% of all homicides for the year.[7]

More to the point of this investigation, most gang-related murders and felonies involve illegal guns, according to federal crime data.[8] Illegal guns circulating among high-risk networks present a threat to the security and well-being of urban neighborhoods. The supply of illegal guns to those embedded in high-risk networks is a critical mechanism in shaping rates of deadly violence in American cities.[9] *See United States v. Politano*, 522 F.3d 69 (1st Cir. 2008) (in affirming above-guideline sentence in firearms trafficking case, the First Circuit noted this Court's reference to the "epidemic of handgun violence in communities within this district" and concluded that the district court "has the authority to conclude that the impact of this particular offense is more serious than that reflected by the Sentencing Commission.").

The negative impact of guns on society goes beyond death and disability. When an individual is victimized by or exposed to gun violence, it increases the likelihood that they will be victimized again or resort to gun violence themselves.[10] Gun homicides also can have severe economic consequences on communities. Residents of communities impacted by gun violence experience lower property values, fewer business startups, and loss of jobs.[11] One study estimated that surges in gun homicides slowed home value appreciation by four percent relative to communities which did not experience a surge in violence.[12] There are further economic

---

[7] *America's gun culture in charts*, BBC NEWS, (August 9, 2019), *available at*: https://www.bbc.com/news/world-us-canada-41488081
[8] *Gun Violence in America*, NATIONAL INSTITUTE OF JUSTICE, (February 26, 2019), *available at*: https://nij.ojp.gov/topics/articles/gun-violence-america
[9] *Supra* note 4
[10] *A Nation of Survivors: The Toll of Gun Violence in America*, EVERYTOWN FOR GUN SAFETY , (February 1, 2019), *available at*: https://everytownresearch.org/reports/nationofsurvivors/
[11] *Id.*
[12] *Id.*

consequences to gunshot injuries, including the immediate hospital costs as well as the lifetime medical care costs including readmission(s) to the hospital and nursing care. Gun violence also financially burdens survivors by diminishing wages and productivity and often results in a mental or physical disability. One study estimates the overall societal cost for each gun-related assault at $1.2 million.[13]

This is a very serious issue in Massachusetts, a state with very strong gun control laws, where most illegal guns come from states along Interstate 95, from Virginia to Maine, which have more lax gun laws.[14] That illegal trade results in a steady supply of illegal guns in urban cities in this state, highlighting the dangers discussed above and the need to punish those involved in providing such dangerous weapons to criminals. For example, in 2018 ATF traced 1,979 guns seized by law enforcement statewide.[15] And while each of the sixteen guns trafficked by the defendant represents a small percentage of that total, each one carried great potential for harm, as discussed above.

*Controlled Substances*

Over the course of the investigation, the defendant sold a significant amount of fentanyl, cocaine, and cocaine hydrochloride. This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl remains the primary driver behind the ongoing opioid crisis, with

---

[13] *Id*.

[14] German Lopez, *I looked for a state that's taking gun violence seriously. I found Massachusetts*, VOX, (November 13, 2018), *available at*: https://www.vox.com/2018/11/13/17658028/massachusetts-gun-control-laws-licenses; *supra* note 4. The top source states for firearms with a Massachusetts recovery in 2020, after Massachusetts itself, were New Hampshire, Maine, Georgia, Florida, South Carolina, and North Carolina. *See ATF Massachusetts Data Source: Firearms Tracing System, January 1, 2020- December 31, 2020 available at:* https://www.atf.gov/resource-center/firearms-trace-data-massachusetts-2020#total.

[15] *See ATF Massachusetts Data Source: Firearms Tracing System, January 1, 2018- December 31, 2018*, available at https://www.atf.gov/file/137141/download. Trace data from 2018 is used here as best reflecting the time period of the defendant's trafficking of firearms.

fentanyl involved in more overdose deaths than any other illicit drug.[16] "Nearly 70 percent of all drug overdose deaths in the United States in 2018 involved an opioid. Deaths involving synthetic opioids other than methadone—the category which includes fentanyl—increased by 10 percent according to data provided by the Centers for Disease Control and Prevention (CDC)."[17]

"Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues.  Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[18]  Massachusetts has been one of the states hardest hit by the opioid crisis and was among the top five states with the most fentanyl reports in 2019.[19] In 2018, about 88% of drug overdose deaths in Massachusetts involved at least one opioid.[20] These statistics are not hypothetical – they describe the opioid overdose crisis occurring right now in this district.  The epidemic is real and being felt every day by families across Massachusetts and New England.

In addition, "production, trafficking, and abuse of cocaine consistently pose a threat … and deaths from drug poisoning involving cocaine have increased every year since 2013."[21] Massachusetts ranked among the states with the greatest number of deaths from drug poisoning involving cocaine in 2018, with 716 deaths.[22]  "Four U.S. states—Massachusetts, New Jersey,

---

[16] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28NDTA%29%20is,laundering%20of%20proceeds%20generated%20through%20illicit%20drug%20sales., at 7 (last visited May 4, 2022) (hereinafter "DEA 2020 Assessment").
[17] *Id.* at 7.
[18] *Id.* at 12.
[19] *Id.* at 8.
[20] National Institute on Drug Abuse, *Opioid-Related Overdose Deaths* (Revised April 2020), available at www.drugabuse.gov/drugs-abuse/opioids/opioid-summaries-by-state/massachusetts-opioid-summary (last visited on January 19, 2022).
[21] DEA 2020 Assessment at 29.
[22] *Id.* at 31.

Ohio, and Pennsylvania—that were among the ten states with the most overall deaths from drug poisoning involving cocaine were also among the ten states with the highest age-adjusted death rates from drug poisoning involving cocaine, per 100,000 population. Those four states collectively accounted for 3,733 deaths, or approximately 25 percent of all deaths from drug poisoning involving cocaine in the United States in 2018."[23] At the same time, "[c]oca cultivation and potential pure cocaine production remain at record high levels in South America, from where almost all of the world's cocaine is sourced."[24] What these statistics and trends illustrate, is that not only does cocaine remain a dangerous drug, which has led to overdose deaths, but the drug remains widely available.

The defendant's crimes played a role in fueling this epidemic, and there is no telling the damage the controlled substances sold here could have caused if not intercepted by law enforcement agents. The nature of this offense requires a significant sentence of imprisonment.

  **B.**  **Characteristics of the Defendant**

Gil-Padilla has a significant a criminal history—indeed probation has determined that he meets the requirements to be a career offender—including a conviction for armed robbery, assault and battery, and sale of and possession with intent to sell controlled substances (heroin). PSR ¶¶ 42, 43. He has admitted he is a member of the Trinitarios Street Gang.

The defendant has held a series of jobs, but his employment has been disrupted by his arrests and detention. PSR ¶¶ 81-86. While incarcerated, Gil-Padilla has taken advantage of available programming, and, among other accomplishments, he completed his GED in February 2022 and a custodial technician program in September 2021. PSR ¶¶ 78, 79.

---

[23] *Id.*
[24] *Id.* at 32.

### C. **Specific and General Deterrence**

A significant sentence of imprisonment is warranted to deter others from becoming involved in any way, role, or capacity in the trafficking firearms, fentanyl, and cocaine. As set forth above, firearms, fentanyl, and cocaine have a deadly impact in Massachusetts and across the United States. Individuals tempted to engage such crimes, particularly those like the defendant who are part of a street gang, must understand that any involvement will have immediate and harsh consequences. A sentence of 188 months imprisonment is necessary to send a strong warning to others who might otherwise consider similar crimes.

Considerations of specific deterrence also support imposition of a sentence of 188 months. The defendant sold a significant quantity of fentanyl and cocaine hydrochloride, and sixteen firearms. He has already served time for distributing heroin and for armed robbery, among other offenses. Despite these convictions, he continued to engage in serious criminal offenses. A significant prison sentence, coupled with a six year period of supervised release, is necessary to deter Gil-Padilla from ever engaging in drug and firearm trafficking after his release.

## IV. THE GOVERNMENT'S RECOMMENDATION

For the foregoing reasons, those contained in the PSR and those to be presented at the sentencing hearing, and in accordance with the plea agreement in this case, the government requests the following sentence:

- a term of 188 months' imprisonment;
- no fine;
- a term of 6 years' supervised release; and
- a special assessment of $500.

The government does not seek any special conditions of supervised release.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | RACHAEL S. ROLLINS<br>UNITED STATES ATTORNEY |
| By: | s/ Carol E. Head<br>CAROL E. HEAD<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>(617) 748-3100 |
| Dated:  May 23, 2022 | carol.head@usdoj.gov |